## DEN EX DEM. SNOWHILL v. SNOWHILL.

1. If lands be devised to infants, with directions that their mother, upon certain conditions, "may be permitted to occupy them" until they are of age, this confers a right to occupy by the mother, if the conditions are complied with, and is not merely permissive upon discretion of the executors.

2. A codicil containing provisions inconsistent with a devise in a will, revokes such devise without any express revocation. And if land is devised by a will to minor children, with provision to their mother to occupy during

Den ex dem. Snowhill v. Snowhill.

their minority, a different disposition of the fee by codicil revokes the right to occupy by the mother.

3. A mere direction to executors to sell land, is a naked power, and gives them no estate or interest in the land whatever; and until the power is executed, the lands descend to the testator's heir-at-law.

4. After the plaintiff in ejectment has rested, and the court have given an opinion against the title shown by him, he cannot claim, as matter of right, to give further evidence showing a title in his lessor different from that first relied upon: it is in the discretion of the court to permit such evidence to be given or not.

5. A person who has been permitted to occupy land for years by a decedent in his lifetime, and by his heirs or devisees after his death, without any definite lease or term, is a tenant for years, and, as such, entitled to a notice to quit three months before the end of the year. And the tenant's right to this notice is not forfeited by contesting the right of the heirs of the plaintiff, claimed wrongfully as executors to the whole premises, they having, as heirs, title to an undivided share thereof.

This cause was tried at the Middlesex Circuit, in the term of December, 1850, before Justice OGDEN. The plaintiff gave in evidence certain deeds, under which it is admitted that Daniel Snowhill, the testator, herein after named, was, at the time of making his will, and also at his death, seized in fee simple of the premises in question.

The plaintiff also gave in evidence the will of Daniel Snowhill, duly executed according to law, dated the 7th day of February, 1842, and also his codicil to his said will, dated the 7th day of July, 1845.

This will and codicil were admitted to probate, by the surrogate of the county of Middlesex, on the 11th day of August, 1848. The parts thereof relating to the subject matter of this case are as follows:

" I give, in equal portions, to Daniel, William, Mary Elizabeth, and David, children of my deceased son, William Snowhill, to their heirs and assigns, or to the survivors or survivor of them, the house and lot now occupied by the widow of my deceased son, with all the appurtenances thereunto belonging.

And I direct that my executors, herein after named and appointed, act as guardians of said children, and hold the above devised property in trust for their sole use and benefit, until the youngest of them shall become of lawful age to receive the same; and I direct the guardians to appropriate the annual in-

come of said property to the keeping of the same in good repair, and the residue to the maintenance and education of the said children ; and if the income should prove insufficient for this purpose, and, in the opinion of the guardians, it should become indispensably necessary to do so, then I give them authority to dispose of the said property, and to appropriate as much as may be necessary of the principal to the support and education of the children. But it is my wish, and I hereby direct, that so long as the mother of the children shall continue the widow of my deceased son, and shall choose to occupy the property, and to use its proceeds for the support and education of the children, she may be permitted to do so.   And it is my will that the property above devised to these children shall be exempted from all claims which I may have against.the estate of my deceased son, William Snowhill.

The residue and remainder of all my estate, both real and personal, not herein otherwise disposed of, I direct my executors, herein after named and appointed, to appropriate to the payment of my debts ; and of what remains after my debts are paid, it is my will that two thousand dollars shall vest in the hands, and be under the management of my executors, to be placed and kept at interest by them on what they shall judge to be good security, and that the interest shall be appropriated by them to the payment of the annuity which I have above directed to be paid to my wife, Sarah Snowhill, until said annuity shall cease to become due.

And I direct that the residue, if any, after the investment of the two thousand dollars, above named, be divided in equal portions among my heirs, above named, that is to say, the children of my deceased son, William Snowhill, to be entitled to their father's share.   And if, after paying my debts, the balance should not amount to two thousand dollars, then it is my will that whatever does remain be invested, and the interest appropriated as above directed, and that the remainder of the annuity shall be paid in equal portions by my heirs, above named.

And I direct that when the annuity to my wife shall cease to become due, then the sum invested for its payment shall be

divided in equal portions among my heirs. And if, in the providence of God, my wife should die before, by my own death, this my last will and testament shall take effect, then I direct that whatever I have herein given and granted to her shall be divided in equal portions among my heirs, above named.

Lastly, I hereby appoint my son, Andrew Snowhill, and Peter C. Stryker, the husband of my daughter Sarah, executors of this my last will and testament, with full power to do all things herein directed."

The codicil directed and devised as follows, to wit:

" And I further direct, that instead of the devise made in my will to the children of my deceased son, William Snowhill, the property therein mentioned shall be sold by my executors as soon as they can dispose of the same to advantage; and from the proceeds of such sale I give, in equal portions, to Daniel, Mary Elizabeth, and David, the surviving children of my deceased son, William Snowhill, to their heirs and assigns, or to the survivors or survivor of them, the sum of three thousand dollars.

And I direct that my executors shall act as guardians of said children, and hold the above devised amount in trust for their sole use and benefit, until they shall become of lawful age to receive the same.

And I direct the guardians to invest the said sum of three thousand dollars on good and sufficient security, and to appropriate the annual income of the same to the education of the said children, as it is my particular wish that they shall be well educated; giving, however, discretionary power to the guardians to appropriate the income, or any part of it, to the use and benefit of the said children, in any other way that they may deem necessary or expedient.

And if the sum of three thousand dollars should not be realized from the sale of the property directed above, then it is my will that whatever amount may be realized from its sale shall be invested and divided, in equal portions, between the said children, as directed above."

It was admitted that the premises claimed by the plaintiff,

and mentioned in the consent rule, are a part of the premises devised by the said will of Daniel Snowhill, and of which he died seized; and that Lydia A. Snowhill, the defendant, is the widow of William Snowhill, the son of Daniel Snowhill, mentioned in the said will; that she has never married since the death of William; that she now resides upon the property in question, and supports the children of the said William from the rents and profits thereof, and has done so since the death of William Snowhill, and that some of the children are yet minors.

The plaintiff here rested his case, and the defendant, by her counsel, moved the court to nonsuit the plaintiff, for the following reasons:

1. The plaintiff cannot recover, because his lessors claim the premises in question as executors of the will of Daniel Snowhill, whereas the said will gives them nothing but a mere power to sell.

2. Because by the said will, the defendant is expressly allowed to retain possession of the premises so long as she shall remain the widow of William, and live upon the premises, and use the same for the support and education of her children; all of which conditions have been kept.

3. Because there was no proof of any demand of the possession of the said premises made upon, or notice to quit the said premises given to the said defendant.

After the argument was concluded, and the judge had delivered his opinion thereupon, nonsuiting the plaintiff, the counsel for the plaintiff offered to prove that the plaintiff's lessors are two of the heirs-at-law of Daniel Snowhill, the testator, the reception of which evidence at this stage of the trial was objected to on the part of the defendant. The court overruled the objection, and admitted the evidence. It was then proved that the number of heirs-at-law of the said testator was *five*, and that Andrew Snowhill, one of the lessors, was one, and the wife of Peter C. Stryker, the other of the lessors, was another.

A verdict was thereupon rendered for the plaintiff for two-fifths of the premises in question.

The questions arising from the above facts were submitted to the court at bar, upon a special state of the case, and a motion made for a new trial.

Argued, February term, before the CHIEF JUSTICE, and NEVIUS and OGDEN, Justices; *Leupp*, for plaintiff, *Schenck*, for defendant.

*Leupp*, for plaintiff.

The will leaves the property under the control of the executors. The defendant was to be permitted to occupy it; this implies control in executors, and negatives any estate in defendant.

If she had any estate by will, the codicil directing it to be sold is in effect a revocation 15 *John. R.* 348, *Jackson* v. *Ferris*; 14 *John. R.* 398, *Jackson* v. *Burtis*; 11 *East* 288; *Adams on Eject.* 82; 7 *Halst.* 99; *Coke Litt.* 113, *a; Hargrave's Notes* 113.

Too late to require notice to quit; she disputed the title of lessors, and claimed right to the whole property, and where tenant denies landlord's title no notice necessary. *Adams* 120; 3 *Wend.* 397; *Spencer* 294, *Den* v. *Wade*; 3 *Harr.* 2, *Thackary* v. *Den*.

*Schenck*, for defendant.

Plaintiff cannot recover by will; that expressly gives an estate to defendant under conditions, which are complied with. By the codicil, the lessors of plaintiff have only a verbal power of sale, without any estate or interest whatever. It is not a devise to them to sell; and in such case it is settled that they have no right to the possession. 2 *Coke Litt.*, Book 2, ch. 27, p. 118; *Shep. Touch.*, ch. 23, p. 448; 6 *Cruise, Tit.* 38, *Devise*, ch. 16, § 23-4; *Powell on Devises* 193; *Cowp.* 657 and 661; 9 *John. R.* 104 and 161, *Jackson* v. *Bunn*; 7 *Cowen* 195, *Jackson* v. *Schautz*; *Saxt.* 147, *Herbert* v. *Tuthill*; 1 *Green's Ch. R.* 113, *Gest* v. *Flock*; *Cro. Car.* 382, *Howell* v. *Barnes*; 14 *John. R.* 527, *Franklin* v. *Osgood*; *Ib.* 391, *Jackson* v. *Burtis*; 15 *John. R.* 346, *Jackson* v. *Ferris*; 16 *John. R.* 167, *Jackson* v. *Given*; 4 *Mass.* 208, *Dawes* v. *Swann*.

The direction in the codicil to sell, is not inconsistent with devise to widow until sale, and therefore is no revocation of it. *Powell on Dev.* 361–2; 2 *Coke Litt.* (*Thomas*) *B.* 2, *ch.* 27, § 118 (§ 383 *of Litt*); 1 *John. R.* 322; *Jackson* v. *Bryan;* 1 *Penn.* 420, *Den* v. *McKay.*

GREEN, C. J. Daniel Snowhill died seized of the premises in question. By his original will, bearing date on the 7th of February, 1842, he devised the land to the children of his deceased son, William, in fee simple. At the date of the will the children were minors, and their mother (the widow of William Snowhill) was in possession of the premises. The will directed that the executors should act as guardians of the children, and hold the property devised to them until the youngest child should arrive at age, in trust, to appropriate the income to keeping the property in repair, and the residue to the maintenance and education of the children. In case the income was insufficient for that purpose, the executors were further authorized, if in their opinion it became indispensably necessary, to dispose of the property devised, and to appropriate so much of the property as might be necessary to the support and education of the children. The will further directed, that so long as the mother of the children should remain a widow, and should choose to occupy the property, and use its proceeds for the support and education of the children, she might be permitted to do so. It is admitted that the defendant has remained a widow since the death of her husband, William Snowhill, and that, since the death of the testator, she has resided upon the premises in question, and appropriated the rents and profits thereof to the support and education of her children, some of whom are still minors.

It is clear that, by the terms of the original will, the fee simple of the land in question was vested in the children of William Snowhill; that the right to the possession and enjoyment of the land, during the minority of the children, was vested in their mother, subject to the conditions prescribed in the will; and that, upon the performance of those conditions, she had the right to the possession and enjoyment of the land

uncontrolled by the executors, until the youngest child came of age. The direction, that, upon the performance of the conditions specified, " *she may be permitted* " to occupy the property, was not designed to make her right of possession subordinate to that of the executors, or dependent upon their permission. The obvious design and meaning of the clause is, that her right to the possession should depend solely upon the performance, by her, of the prescribed conditions. Upon the performance of those conditions, her right of possession became absolute, and paramount to that of the executors. Their right of possession is subordinate, and arises only upon the failure of the widow to comply with the conditions prescribed.

If this clause of the original will remains in force, the case is clear against the plaintiffs. The material question is, whether this provision of the will is not revoked by the codicil bearing date on the 7th of July, 1845.

There is no revocation, in *express* terms, of the disposition of the land in question contained in the original will, nor is it necessary that there should be. If the subsequent disposition of the land be inconsistent with the former, it operates necessarily as a revocation. 1 *Powell on Devises* 517; 1 *Jarman on Wills* 156.

But it is an established rule not to disturb the dispositions of the will further than is necessary for the purpose of giving effect to the codicil. 1 *Jarman on Wills* 160.

In the application of these principles to the case under consideration, it is clear that the codicil operates as a revocation of the devise of the land to the children of William Snowhill. The testator directs, that " *instead of* " the devise made in the will to them, the lands devised shall be sold by his executors, as soon as they can dispose of the same to· advantage, and that out of the proceeds William's children shall receive $3000, if the sale amount to so much, or whatever amount less than $3000 may be realized from the sale. The codicil does not leave it in the·discretion of the executors, or dependent on a given contingency, (as under the original devise) to make sale of the land, but contains a peremptory direction that the land be sold as soon as it could be disposed of to ad-

vantage, and the proceeds, not exceeding $3000, be paid to the original devisees, the excess of the sale, if any over that amount, falling into the residue of his estate. The devise of the will and the directions of the codicil are utterly inconsistent, and cannot stand together.

But it is insisted, that though the devise to the children be revoked, yet it is not necessary, in order to give effect to the codicil, to disturb the directions of the will ; that the mother shall enjoy the property for the support of her children, so long, at least, as the property remains unsold. The direction, that the mother occupy the property, was founded upon the devise to her children. She was to occupy it as their land, for their support and maintenance during their minority. The directions, that the executors should hold the property during the minority of the children, and that the widow, at her election, might occupy during her widowhood, are part and parcel of the devise to the children, containing merely directions for the advantageous management of the land devised during the minority of the devisees. An order to sell the land and a revocation of the devise are clearly inconsistent with the right of the trustees or of the widow to hold the property until the youngest child should attain his majority. If such claim had been set up by the executors, it would have operated to the prejudice of the rights of the older children under the codicil, and the executors might have been compelled to make sale. It is not perceived that the case is really different in respect to the widow.

This being the case, the widow cannot defend under any right of possession vested in her under the will.

But it is incumbent upon the plaintiffs to show not only that the defendant is not entitled to the possession, but that they are. They must recover upon the strength of their title, not upon the weakness of hers. Have they shown title ?

They take nothing by virtue of any devise to them as executors, either under the will or under the codicil. The authority to make sale of the land in question is a naked power, not coupled with an interest. It vests in them no title to the land. It confers upon them no present right of possession.

Until the sale be made, the title and the right of possession descend to the heirs-at-law. 2 *Coke Litt.* (*Thomas*) *Book* 2, *ch.* 27, *p.* 118 ; 2 *Shep. Touch.* 148 ; 1 *Pow. on Dev.* 233 ; 4 *Kent's Com.* 320 ; 9 *John. R.* 104, *Jackson* v. *Burr ;* 1 *Green's Chan. R.* 108, *Gest* v. *Flock.*

The lessors of the plaintiff, therefore, cannot recover by virtue of any title vested in them under the will, either as executors or guardians of the children of William Snowhill, deceased.

By the evidence produced on the trial, it appears that the heirs-at-law of the testator are five in number, of whom one of the lessors of the plaintiff and the wife of the other lessor are two, and that they are consequently the legal owners of two-fifths of the premises in dispute. This evidence was offered and received after the cause had been argued and the opinion of the court pronounced upon the title of the plaintiffs, as originally adduced under the will of Daniel Snowhill. This evidence was objected to as inadmissible, on the ground that it was offered after the cause had been argued and the opinion of the court pronounced, and that it presented a ground of recovery entirely inconsistent with the claim of the plaintiffs, as originally presented and relied upon. It is not denied that the evidence in itself is competent. The objection addresses itself merely to the conduct of the cause at the circuit, a matter resting exclusively in the discretion of the judge by whom the court was held, with which this court cannot interfere. Nor is there any ground of interference. The discretion appears to have been wisely and fairly exercised, not to the prejudice of the defendant.

But admitting the title of the plaintiffs, are they in a position to recover? They recover, if at all, upon a strict legal title, not upon the ground that they have any just claim to the enjoyment of the land or to the rents and profits, but on the ground that, as heirs-at-law, they have the title, and consequently the right of possession, until the land is sold in pursuance of the directions of the will ; standing upon the *apices litigandi,* it is necessary that their right of recovery should be strictly legal.

It appears that the widow had been in possession of the land in question several years before the death of the testator, and that she continued in possession after his death until the commencement of this suit. No lease or tenancy for a definite period being shown to exist, she is to be regarded as a tenant from year to year ; and, in the absence of any specific contract as to the termination of her tenancy, she was entitled to a notice to quit before she could be treated as a trespasser and subjected to costs and damages in a suit at law. *Den* v. *McKay*, Penn. 420 ; *Den* v. *Depue*, 6 *Halst.* 409 ; *Den* v. *Drake*, 2 *Green* 523 ; *Jackson* v. *Bryan*, 1 *John. R.* 322.

It is said that the defendant denied the plaintiff's title, and claimed adversely, and that in such case no notice is necessary. But how does that fact appear ? The lessors of the plaintiff claimed originally the whole premises under the will of Daniel Snowhill. Upon that claim they relied until the decision of the court was pronounced against them. That claim the defendant resisted, and successfully. But it does not appear that she ever denied or questioned their title as heirs-at-law to two-fifths of the premises. There is no proof of any disclaimer of tenancy by the defendant of the shares for which the lessors of the plaintiff now show they are entitled, and consequently no forfeiture of her right to notice to quit.

Judgment must be entered for the defendant.

NEVIUS and OGDEN, Justices, concurred.

CITED *in Romaine* v. *Hendrickson's Ex'rs*, 9 *C. E. Gr.* 237.